UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NESTOR ANDRES ARRIETA PATERNINA,<br><br>Petitioner,<br><br>v.<br><br>SERGIO ALBARRAN, ET AL.,<br><br>Respondents. | Case No.: 4:25-cv-10378-YGR<br><br>ORDER GRANTING PRELIMINARY INJUNCTION |

Petitioner in this action is an asylum seeker from Colombia who was arrested during an immigration check-in on December 3, 2025 at the field office of Immigration and Customs Enforcement ("ICE") in San Francisco. That day, he filed a petition for a writ of habeas corpus as well as a motion for a temporary restraining order ("TRO"), which the Court granted the same day. In so ruling, the Court ordered respondents to show cause why a preliminary injunction should not issue following the TRO's expiration. The parties stipulated that the Court vacate the preliminary injunction hearing and decide petitioner's motion[1] on the parties' written submissions.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** petitioner's motion for a preliminary injunction.

I.   BACKGROUND

The following facts appear undisputed:

---

[1] Given the posture and relief requested, the Court construes the original TRO motion as a motion for a preliminary injunction. *See* Dkt. No. 13, Petitioner's Reply to Respondents' Response to Order to Show Cause ["Reply"] at 2 (requesting the Court construe petitioner's TRO motion as a motion for a preliminary injunction).

Nestor Andres Arrieta Paternina is an asylum seeker from Colombia who entered the United States on or around April 29, 2024 at or near Eagle Pass, Texas. (Dkt. No. 13-1, Declaration of Petitioner Nestor Andres Arrieta Paternina ["Paternina Decl."] ¶ 2; Dkt. No. 13-2, Form I-862, Notice to Appear ["Form I-862"].) Petitioner subsequently "turned [him]self in to border officers" and was detained by the Department of Homeland Security ("DHS"). (Paternina Decl. ¶¶ 2–3; *see* Dkt. No. 11, Respondents' Response to Order to Show Cause ["Resp."] at 2–3.) After finding that petitioner demonstrated a credible fear of prosecution or torture, DHS released petitioner on his own recognizance on or around May 24, 2024[2] and ordered him to appear before an immigration judge in Pearsall, Texas on July 1, 2024 for removal proceedings.[3] (Resp. at 3; Paternina Decl. ¶ 5; Form I-862.) Petitioner contends, and respondents do not dispute, that petitioner's "prior release from DHS custody necessarily required an assessment that he was neither a danger nor a flight risk." (Reply at 1; Dkt. No. 1, Petition for Writ of Habeas Corpus ["Pet."] ¶ 31.) Though not provided in the record to the Court, the Court takes judicial notice of the fact that Form I-220A states that the release was subject to 8 U.S.C. Section 1226.[4] *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

---

[2] Petitioner states that his credible fear interview took place on May 7, 2025 and that he was notified he would be released about two weeks later. Paternina Decl. ¶ 4. However, petitioner's Notice to Appear (Form I-862) was served on May 24, 2024. Form I-862. As such, the Court construes the May 7, 2025 date as a typographical error and assumes that petitioner was initially released from DHS custody on or around May 24, 2024.

[3] Petitioner filed his Form I-862 concurrently with his reply but states that he does not have a copy of his Order of Release on Recognizance (Form I-220A) because respondents took the original document from him upon his detention on December 3, 2025. Reply at 1 n.1.

[4] *See* https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf ("In accordance with section 236 of the Immigration and Nationality Act [codified at 8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions . . . ."); *see also Jimenez Garcia v. Kaiser*, 4:25-cv-06916-YGR, 2025 WL 3500767, at *1 (N.D. Cal. Aug 29, 2025) (taking judicial notice of the same fact despite that petitioner's Form I-220A was not before the Court).

On or around December 27, 2024,[5] petitioner filed an application for asylum with the San Francisco Immigration Court. (Paternina Decl. ¶ 7.) He thereafter received a work permit and Social Security number and has lived in San Francisco working as a caretaker and delivery driver. (*Id*. ¶¶ 7, 9.) He takes daily medication for high blood pressure. (*Id*. ¶ 8.) Petitioner also contends, and respondents do not dispute, that he has "remained compliant with the electronic monitoring and in person check ins ICE has imposed on [him]." (*Id*. ¶ 5; Dkt. No. 4, Petitioner's *Ex Parte* Motion for Temporary Restraining Order ["Mtn."] at 13.)

On December 3, 2025, petitioner appeared for a check-in appointment at the San Francisco ICE field office and was arrested by ICE agents. (Pet. ¶ 33; Resp. at 3.) Petitioner contends, and respondents do not dispute, that he was detained without notice or a pre-deprivation hearing and without the ability to meet with his attorney. (Pet. ¶¶ 34, 47; Mtn. at 12; Reply at 1.) Petitioner further contends, and respondents do not dispute, that he "has no criminal history, remains neither a flight risk nor a danger to the public, and the government did not provide notice or a pre-deprivation hearing to demonstrate that any such changed circumstances existed that would constitutionally permit his re-detention." (Reply at 1; Mtn. at 9–10.) Later that day, petitioner secured a TRO ordering his release from ICE detention, and he was released pursuant thereto. (*See* Reply at 4.) The TRO enjoined and restrained respondents "from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing Petitioner from the United States." (Dkt. No. 6, Order Granting Temporary Restraining Order ["TRO Order"] at 5–6.) The TRO further required respondents to show cause why a preliminary injunction should not issue. (*Id*. at 6.)

Petitioner's motion requests that the Court "prohibit Petitioner's re-detention without a pre-deprivation bond hearing before a neutral adjudicator, where Respondents shall bear the burden of

---

[5] The petition states that petitioner filed for asylum on January 27, 2024 (Pet. ¶ 31), but petitioner's declaration and his attorney's declaration state that petitioner filed for asylum on December 27, 2024. Paternina Decl. ¶ 7; Dkt. No. 4-2, Declaration of Andrea Reyes Corena in Support of *Ex Parte* Motion ["Corena Decl."] ¶ 9. Respondents state that petitioner filed for asylum on January 27, 2024. Resp. at 3 (citing Pet. ¶ 31). Given that petitioner entered the country on or around April 29, 2024, the Court considers December 27, 2024 as the date that petitioner filed for asylum. In any event, the date that petitioner filed for asylum is not pertinent to resolving the instant motion.

3

proof to show, by clear and convincing evidence, that Petitioner is a danger or a flight risk." (Mtn. at 1.) The motion further requests that the Court enjoin "Respondents from transferring Petitioner out of this District or deporting him during the pendency of the underlying proceedings." (*Id.*) On December 10, 2025, respondents filed their brief opposing a preliminary injunction, to which petitioner replied on December 14, 2025. In accord with the motion, the reply requests that respondents be enjoined from "imposing any restrictions on [petitioner's] liberty, including electronic monitoring, unless determined necessary at a pre-deprivation hearing . . . ." (Reply at 2.)

## II.   LEGAL STANDARD

A "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). To secure a preliminary injunction, a plaintiff "must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter*, 555 U.S. at 20.). Alternatively, a preliminary injunction may issue where "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor" if the plaintiff "also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). This is the Ninth Circuit's "sliding scale" approach, in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. In all cases, at an "irreducible minimum," the party seeking an injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Pimental v. Dreyfus,* 670 F.3d 1096, 1105–06 (9th Cir. 2012) (quoting *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009)).

### III. ANALYSIS

Respondents[6] do not substantively challenge the Court's prior findings that the likelihood of irreparable harm, balance of the equities, and public interest all weigh in favor of granting petitioner preliminary relief. (*See* TRO Order at 3–4.) Rather, respondents contend that petitioner is unlikely to succeed on the merits of his procedural due process claim because he is subject to mandatory detention under 8 U.S.C. Section 1225(b)(2). (Resp. at 2 (incorporating by reference arguments on this prong made in *Jimenez Garcia*, 2025 WL 3500767, and "other similar cases in this District").)

Petitioner argues that when he entered this country, the government detained him and then released him pursuant to 8 U.S.C. Section 1226—not Section 1225—affording him due process rights. Respondents maintain that petitioner is subject to mandatory detention because he is an "applicant for admission" to the United States under 8 U.S.C. § 1225(b)(1), relying principally on decisions in other district courts and the Board of Immigration Appeals. However, respondents "acknowledge that questions of law in this case substantially overlap with those at issue in *Jimenez-Garcia* and other cases in this District that have concluded that § 1225(b) is not applicable to individuals who were conditionally released in the past under § 1226(a)." (Resp. at 4 (referencing *Jimenez Garcia*, 2025 WL 3500767).) As such, respondents concede that the Court's reasoning in *Jimenez Garcia* "would control the result here." (*Id.* at 1.)

In *Jimenez Garcia*, the Court found that the petitioner had a protectable liberty interest in avoiding re-detention because respondents chose to pursue proceedings under Section 1226. 2025

---

[6] In a footnote, respondents purport to "move for all Respondents other than Petitioner's immediate custodian to be dismissed from this case." Resp. at 2 n.1 (citing *Doe v. Garland*, 109 F.4th 1188, 1197 (2024); *Rumsfeld v. Padilla*, 542 U.S. 426, 434-36 (2004)). Petitioner contends that all respondents are properly named because he did not come under custody of a warden before the TRO issued and because he seeks an injunction against his re-detention by DHS absent process. Reply at 2–3. The Court **DENIES** respondents' request for affirmative relief as procedurally improper because it is "raised for the first time in an opposition," and respondents do not indicate how this argument "should factor into the Court's analysis of the instant motion." *See Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025) (quoting *SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2021 WL 1574660, at *5 (D. Ariz. Apr. 22, 2021)).

WL 3500767, at *6. To hold otherwise, the Court reasoned, would "jettison long-standing due process principles" and "effectively authorize an impermissible *post hoc* rationalization for the government's attempt to detain petitioner." *Id.* at *5–6. Having found a protectible interest, the Court proceeded to find that the factors contemplated in *Matthews v. Eldridge* weighed in favor of finding a likelihood of success of petitioner's procedural due process claim, given (1) petitioner's private interest in remaining home, receiving medical care, and maintaining her relationships in the community; (2) the high risk of erroneous deprivation of petitioner's private interests in light of the government's obvious disregard thereof; and (3) the government's lack of compelling interest in conducting "[s]weeps of persons who are . . . complying with the requirements that the government itself imposed for the orderly disposition of claims . . . , especially where the government itself has already determined that the person poses no threat to the community, is not a flight risk, and has not committed any crimes." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Here, there are no facts or arguments compelling a different result. Like in *Jimenez Garcia*, respondents do not dispute that petitioner was initially released pursuant to Section 1226. Also like in *Jimenez Garcia*, there is a high risk of erroneous deprivation of petitioner's substantial private interests that would be affected by re-detainment without a hearing, and respondents lack a compelling interest in re-detaining an asylum seeker who was complying with DHS requirements and who DHS already determined does not to pose a danger or flight risk. That is especially so where, as here, respondents do not articulate any changed circumstances warranting re-detention.

As such, the Court finds petitioner likely to succeed on the merits of his claim that he is entitled to a hearing before a neutral arbiter, in accordance with due process protections, prior to re-detention[7] and hereby issues an injunction to that effect. However, without further briefing, the Court takes no position regarding whether respondents may impose electronic monitoring on petitioner unless determined necessary at a pre-deprivation hearing. As noted above, petitioner's Form I-220A is not before the Court, and the Court otherwise lacks sufficient information to

---

[7] Petitioner's motion also argues that his re-detention violated his substantive due process because it was "both punitive and not justified by a legitimate purpose." Mtn. at 9. Because the Court finds petitioner entitled to an injunction mandating a hearing before a neutral arbiter prior to any re-detention, it expresses no view on the substantive due process claim.

6

determine whether petitioner was subject to electronic monitoring as a condition of his initial release on recognizance on or around May 24, 2024.

Lastly, respondents argue that, should the Court determine that petitioner's detention is subject to 8 U.S.C. Section 1226(a), the Court should not order immediate release but instead should "order a bond hearing before an immigration judge ('IJ'), during which the IJ can properly determine in the first instance whether Petitioner is a flight risk or danger to the community." (Resp. at 5.) As an initial matter, that request is moot because, as noted above, respondents have already released petitioner pursuant to the Court's TRO. (*See* Reply at 4.) Moreover, that argument fails because respondents do not dispute that DHS already found that petitioner was not a flight risk or danger to the community when it released petitioner on his own recognizance after his initial detention, nor do they assert any changed circumstances warranting re-detention. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal.")

### IV.   CONCLUSION

Based on the above, the Court **GRANTS** the motion for a preliminary injunction and **ORDERS** as follows:

1. Respondents are **ENJOINED AND RESTRAINED** from re-detaining petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker where the government bears the burden of proving by clear and convincing evidence that changed circumstances render him a danger to the community or a flight risk, and that no conditions other than his detention would be sufficient to prevent such harms.

2. Respondents are **ENJOINED** from transferring petitioner out of this district or deporting him pending these habeas proceedings.

3. The Court finds no need, nor has there been a request, for a bond.

4. This preliminary injunction **SHALL REMAIN** in force throughout the pendency of this action unless earlier modified by the Court.

The parties shall meet and confer with respect to a case schedule. The parties shall file a joint statement by no later than January 5, 2026.

**IT IS SO ORDERED**.

Date: December 16, 2025

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**